The trial court's admissions of the out-of-court hearsay statement of Codefendant Solomon Osiris when considered in conjunction with the rest of the testimony in the trial created the compelling and strong inference that Mr. Taylor was the other participant in the shooting. That is the essence of the Bruton violation in this case, and the appellate court's decision upholding the conviction and sustaining the admission of that statement was an unreasonable application of the Bruton rule. Counsel, in your view, which of the Bruton progeny most closely resembles your case? Well, I wanted to say in response to that that Bruton is the clearly established rule that we rely upon, and there have definitely been a number of cases that have refined it, but Bruton is where we rest our claim. I think that the – what the Gray v. Maryland case does is it limits Richardson, and that's important for the resolution of this case because Richardson, in turn, limited the inferential incrimination. So is your answer to my question that Gray v. Maryland is the case that most closely resembles the facts of your case? Actually, a case that I cited in my reply brief clearly – which interprets Bruton and applies it to very similar facts is, I think, the most analogous precedent, and that is the Mason v. Scully case in the Second Circuit. And, again, that's a case deciding the matter directly under Bruton and an additional Strickland violation. But in that case – in that case, in a robbery trial, a statement is admitted of a detective's interview with the co-defendant, and it's very much redacted along the lines and similar to the statement in this case. And what the court does is it finds that the out-of-court statement indirectly referred to and had to have the result of referring to the co-defendant when considered in the – considered in the light of the prosecution's theory that the statement led the police to focus upon the defendant as the other participant in the shooting. And I think that – Counsel, is there a case within this circuit that we feel closely resembles the facts of your case? Your Honor, I think that the – perhaps the most analogous case is the U.S. v. Mayfield decision from this court, I believe, in 1999. And what that case does is distinguishes, in finding a Bruton violation, Marsh in three important respects. One, it points out that in Marsh, the co-defendant's redacted confession was redacted in such that every single reference to the defendant had been omitted, so that the statement only refers in Richardson to the defendant – the co-defendant himself. There's no references. So it's your view that too much redaction also violates Bruton? No, Your Honor. What I was saying is that in Richardson, the court found that the statement was not powerfully incriminating because the statement was redacted in that case such that it only referred to one person, and that was the co-defendant. What was the problem with the redaction in this case? What is the problem? Yes. I think it's very important to see the sequence of the questions and answers and how they fit together. That is key to the resolution in this case. The district court found that the reference to the white line, Mr. Taylor, only was in context of the evening news. The evening news said there was two people involved and that the statement of the co-defendant only referred to what he did. I submit that those statements cannot be read independently. They cannot be read discreetly or separately. They have to be read in conjunction with each of the questions and answers. Could we look at the testimony that was actually admitted, and could you tell us what portion of that testimony you feel violates proof? Yes, Your Honor. The key statements are on page 14 and 15 of our opening brief with citations to the excerpt. And the prosecutor asks, did you see anything on the news that made you become alarmed? Yes, says the witness, Jackie Phelps. Prosecutor, and would you tell the jury what it was you saw that caused you to become alarmed? Answer, that a Hispanic male had been shot and two men fled in a car with a California license plate. Now, counsel, is there anything in that segment of the testimony that you contend violated proof? Yes, but it also has to be considered in light of what those few questions that come next, Your Honor. Okay, but before we go to the next questions, what portions of this segment, in conjunction with later testimony, are you contending violated proof? Just what I quoted, Your Honor. Counsel, you can't possibly object to that, can you? Because what Ms. Phelps is describing is what she saw on the news. That's not a witness from the co-defendant. That's a witness from somebody else. But, Your Honor, respectfully, my point is that that cannot be segregated in light of the ensuing questions and answers. That when she then is asked, and did you turn and confront the co-defendant, Solomon Osiris, about what you heard on the news, yes, I did, what did you say to him? Did he do that? And what did he say? He hesitated and nodded yes. And so he's not just saying what he himself did in that answer, but he's also saying that, yes, there was two men. He's admitting that. No, she hasn't said one word about two men. There's not one thing in that transcript that talks about two men except for her relating what she heard on the TV. But I would submit, Your Honor, that then the follow-up questions where he answers that, yes, he did that, but he didn't make any reference to a co-defendant at all. But when you join that and consider it perhaps better in the light of the rendition of what is heard on the news, it's a statement about what two men did. And that is even further underscored with the follow-up questions when there are questions about what is the race of the person and it is further honed and made more precise as to the victim being Mexican. I'm trying to follow your point. Let me give you a question and you can help me. It sounds like you're saying that under Bruton, number one, the prosecution cannot present the statement of a co-defendant which implicates the defendant who is implicated in the statement. Secondly, it sounds like you're arguing now that the prosecution cannot bring in other evidence outside of the statement, and let's say a redacted statement, to implicate the defendant who is protesting. Is that your point? When the statement considered in light of the rest of the evidence at trial compels the inference that this person referred to is the defendant, that would be a Bruton error. So if they brought in a robbery victim who testified, two men robbed me, that one and that one, and then there was a redacted statement from one of them that didn't mention the defendant who is protesting, that would violate Bruton? That perhaps in a hypothetical sense of that, it would not, whereas if in light of the specific questions that are asked here that hone the precision of the co-defendant's out-of-court statement, and then when considered in light of the specific testimony offered before or after the statement, it can collectively violate Bruton. But in my hypothetical, isn't that exactly what occurs? That man and that man robbed me. A statement comes in from one of them which says, I was guilty of robbery on that day. I think that that can rise to the level of a Bruton violation, but we have even a stronger situation here. In light of the... So your position is then you can never offer a Bruton redacted statement? No, definitely not. Well, how then would you convict the other person? I'm saying that there are certain facts when a redacted statement and considered in light of the evidence would not violate Bruton. And there's certainly... I'm trying to figure out. Give me an example of what you're saying. An example of a situation that would not violate Bruton as opposed to what we have... Yeah, with a redacted statement like this one. Because your attack is on Phelps' testimony, right? Yeah. And tying what she said to the redacted statement. You're not really complaining about the redacted statement. Am I correct? The statement was properly redacted. Well, no. The statement itself, even redacted, violated Bruton. Why? Because when considered in light of the other evidence, that very statement, considered in totality, each of the statements, as they're set forth here on pages 14 and 15 of our brief, created the compelling and strong conclusion that it was Mr. Taylor as the other person involved or other participant. But Mr. Taylor is not, is nowhere mentioned on here. And she asks, the prosecutor says, did you turn and confront Solomon Osiris? It doesn't say anything about Mr. Taylor, about what you heard on the news. Phelps, yes, I did. What did you say to him? Did he do that? Not did they do that. Did he do that? What did he say? He hesitated and nodded yes. We haven't implicated anybody else there. We're going to have to find other evidence that Mr. Osiris was outside with his son, Harris Taylor, and that they together confronted him. What seems to be more troublesome is on page 60, which you haven't cited, is where Phelps says, what did he tell you that he did to the Mexican who had been killed? And he answers, slapped him, suggesting that, obviously, I didn't kill him. Somebody else must have killed him. The inference would be, well, it was whoever was with him, which was his son. I definitely agree that that's part of it. I just hadn't yet gotten to that. But we still in no place here have referred to the presence of any other person. This is an out-of-court statement, but the thrust of my argument is that it has to be considered in light of the other evidence and, in fact, Jackie Phelps' other evidence about facing Mr. Taylor with Mr. Osiris. Counsel, what's your best case authority for the proposition that evidence other than the statement is to be considered in calculating a brutal error? What's your best case for that? Again, Your Honor, I think that makes Mr. Taylor's case stand apart because it not only refers to the other evidence, but refers to how the prosecutor is posing arguments. Are we permitted to look to out-of-circuit authority to determine what clearly established law is? Your Honor, yes. In a number of cases, this Court has relied on other circuit authority for determining what Supreme Court precedent. Did you cite me to one of those cases where we have said that we are permitted to look to out-of-circuit authority to determine what is clearly established law? Your Honor, recently in a case this Court decided, Bailey v. Ray, the question is whether or not certain evidence that was admitted was cumulative under Brady. And the Court cited a case from the Seventh Circuit to demonstrate its point that the kind of evidence offered in that case provided independent corroboration of the defense theory and was, therefore, not cumulative in it. Cumulative. And I offer that as an example of where the Court directly used it. Did it cite that case for the proposition that we may look to out-of-circuit authority in determining what is clearly established Federal law? That is correct, Your Honor. Decided for that precise proposition. It's not, but that's exactly what the Court is doing in that situation. It cites the Seventh Circuit case. And no Ninth Circuit authority was cited? Well, the Ninth Circuit has said in its prior decisions, I think it's the Duhame – I may be mistaken, but I think it's the Duhame v. Ducharme case that we can – that the Ninth Circuit, rather, can look to its own precedent to decide what the Supreme  And it's not that the Ninth Circuit has ruled in prior cases, but in conjunction with cases such as Bailey, it is evident that the Court also finds instructive other circuits' decisions in determining what the Supreme Court has held. All right, counsel. We'll give you one minute of a story bottle. Thank you very much. Thank you, Your Honor. May it please the Court. Kinsella Bexington for the State of Oregon. This is a case under Section 2254 and under D-1. The applicable standard is whether the State court's action was contrary to well-established Federal law as determined by the United States Supreme Court. And this Court said in Ortiz-Sandoval, which I cite in my brief, that this Court's decisions do not bind the State court in this kind of situation. The only thing that binds the State court as far as the 2254 analysis is the decisions of the United States Supreme Court. Counsel, you do recognize that we've said we may look to our precedent in determining what clearly established Federal law is for purposes of habeas. Yes, I agree. I don't have any problem with that. I don't mean to suggest otherwise. But ultimately, the question is what the United States Supreme Court has held. Now, you also have to remember that this case was tried and affirmed under our appeal in 1994. So the question, at least under the United States Supreme Court's decision in Williams, the question is what was clearly established Federal law as determined by the United States Supreme Court in 1994. Many of the cases, as I point out in my brief, many of the cases on which the petitioner relies were cited after 1994, and we hence can't inform the inquiry here. In any event, all the cases that he relies upon are distinguishable for the reasons I set forth in my brief. In Bruton, the case that he relies on is Bruton, and obviously Bruton is distinguishable here because there was no redaction in Bruton. The non-testifying co-defendant statement that was admitted specifically identified the defendant as the co-perpetrator of the crime. And the U.S. Supreme Court said, well, that's a problem. Well, that's not what happened here. This case, it was after Bruton was decided, the United States Supreme Court decided Richardson v. Marsh, in which the court said, if you do redact entirely the non-testifying co-defendant statement to eliminate all references to the co-defendant, then there's not a problem. So Richardson was the law in 1994 when this case was tried. And what the trial court here did was comply to the letter with Richardson. They eliminated all references. The redacted statement eliminates all references to this petitioner. If you look at page 14, 15, and 16, the statements that Phelps testified that the Osiris said to her, all, as this Court already has noted in colloquy with Petitioner's counsel, all referenced only that particular non-testifying co-defendant. There is no reference, either by pronoun or by any other way, of anybody else that Osiris says that anybody else was with him. Now, Petitioner says, well, but Phelps had seen on the news that there were two people. Well, that's not the issue. The issue is, was there anything that Osiris said in the statements that were admitted that either directly or indirectly referenced anybody else? And the answer is absolutely not. This was absolutely correctly redacted under Richardson as it existed, as the State of the Law was in 1994. After this case was decided. Mr. Counsel, was it improper, was it hearsay to ask Phelps about what she had seen on the news? And couldn't we have redacted her statement about what she saw on the news to say that a Hispanic male had been shot and the perpetrator fled in a car with a California license plate so that we admitted the fact of the two men? Well, I suppose, strictly speaking, it might have been hearsay and it might have been a valid objection, but there was never any objection below on that ground. It's never been an issue on the deal, so to the extent that there is any sort of possible objection, that's a long-term procedure. In any event, all she testified, all that she said in that statement was referenced evidence that already had been admitted at trial properly through other witnesses. That is, there were two people who were at the scene, they fled in this car, et cetera, et cetera. And so all the prosecutor was doing there is providing the basis for why she asked Osiris these questions and why she was suspicious that maybe Osiris was involved in it. And so all that was is it wasn't necessarily offered for the truth of the matter asserted. It was simply offered to explain what she did next. But in any event, that particular issue isn't in this case because there was no objection below and there's no objection here on the deal for that. Also, I would point out, in reference to the petitioner's reliance on Mason, here there never has been any suggestion of the prosecutor during oral argument or otherwise ever, closing argument or otherwise, ever made an appropriate use of this particular evidence. So, in any event, after this case was decided in the state court, the United States Supreme Court came out with this decision in gray. And I quote in my brief on pages 20 and 21 the court's decision in that case, and I have to confess that there's an unfortunate typographical error in there and I wanted to point that out. What the court said in gray is, we can see that Richardson placed outside the scope of rule those statements that incriminate inferentially. And then later on in the opinion, the court said, that being so, Richardson must depend in significant part upon the kind of, and there should be a not there, the kind of, not the simple fact of inference. In other words, what the court was saying in gray is that what Richardson says is that if the only inference of guilt is from other evidence that's admitted in the case, that's okay. Richardson says that's okay. And then the court goes on to say, Richardson's inference involves statements that did not refer directly to the defendant himself and which became incriminating only when linked with evidence introduced later at trial. And then in gray they go on to explain, the inferences at issue here involve statements that despite redaction obviously refer directly to someone, often obviously the defendant and which involve inferences that a jury ordinarily could make immediately even if the confession, sorry, even were the confession the very first item introduced at trial. In other words, the problem in gray was that the redacted statements themselves necessarily allowed the inference that there was somebody else there because they referred to someone else and there were blanks and that sort of thing. So the problem in gray was that the redacted statement on its face suggested the presence of somebody else or the complicity for somebody else. And that's why the court said in gray that was a problem. But they distinguished the situation in Richardson where the statement that is offered is redacted to eliminate all reference to another person and the only evidence of guilt is based on other evidence, not the redacted statement itself, but other evidence. And so gray is right on point here in the sense that gray explains that what happened in this case was entirely appropriate under Richardson and does not present the problem So I don't think that there's any error here. Even if you consider the weight of the decision of gray, unless the court has questions, that's all I have. Thank you, counsel. Rebuttal, one minute. Just a couple of points there, Your Honors. I think that what's significant about gray is that it in turn limited Richardson's limitation on the inferential incrimination rule, that when there is a significant inferential incrimination, that can violate scrutiny. And that's what we have in this case. When the statement considered in light of the other evidence at trial compelled the conclusion that Mr. Taylor was the other participant in the shooting. Perhaps I could clarify a point that I was making about Mason v. Scully. It's not as counsel suggested that we're saying that there was an improper use of the statement in the sense of prosecutorial misconduct. That's not what we're saying. We're saying that the gist of the prosecutor's argument or the theory of the case, why this particular defendant was the one who committed the crime, can be considered, along with the other evidence, as we're saying, in determining whether or not there was a Bruton error. And that is our position, Your Honor. Thank you, counsel. Thank you to both counsel. The case just argued. It's submitted. That completes our calendar for the day. We have visiting with us, an eighth grade class, and we're going to stay behind to answer any questions you may have. Everyone else is free to leave the courtroom. We'll stay if you wish.
judges: Alarcon, Rawlinson, Bybee